# Z.

ZACHRISSEN (BRETT v.).    See Case No. 1,845.

## Case No. 18,198.

### ZAHM v. FRY et al.

[9 N. B. R. 546; [1] 10 Phila. 243; 31 Leg. Int. 197; 21 Pittsb. Leg. J. 155.]

Circuit Court, W. D. Pennsylvania.    May 11, 1874.

BANKRUPT ACT—ILLEGAL PREFERENCE—PURCHASER UNDER VOIDABLE JUDGMENT.

1. Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473], examined, and held not to cover a case where the debtor does the least act whereby the preference is facilitated: as where the judgment was entered upon his warrant of attorney to confess.

2. A purchaser at sheriff sale, after proceedings commenced in bankruptcy, where the levy was made prior thereto, will acquire a good title notwithstanding that the judgments under which the sale took place are afterwards declared void as in fraud of the act.

3. Judgments whereby a creditor of an insolvent obtains an illegal preference are voidable but not void per se.

[Appeal from the district court of the United States for the Western district of Pennsylvania.]

In 1867, Albert G. Fry, George Duerr, and Wm. Holzner, came from York county, Pa., to Cambria county, for the apparent purpose of manufacturing and selling lumber. Having about fifteen hundred dollars capital, they purchased a small tract of land with a steam saw mill thereon, situate in Susquehanna township, for the sum of three thousand dollars; paid a small part thereon, and gave their obligations for the balance, payable in one, two or three years. They immediately bought teams and the necessary materials, largely upon credit, and commenced the business of manufacturing and selling lumber in the firm name of Fry, Duerr & Co. A. G. Fry, the senior partner, in the spring or summer of 1869 opened a store consisting of a general assortment of merchandise in Ebensburg in his own name, the goods being bought principally, if not altogether, upon credit. In the spring of 1870, they quit manufacturing lumber in Susquehanna township, and commenced to erect a new steam saw mill in Cambria township, about three miles south of Ebensburg, at an expense estimated by the witnesses examined at from five thousand to ten thousand dollars, and which was about completed when they failed on the 18th August, 1870. During the whole time they were in business, they were much embarrassed, and in constant difficulty with their

---

[1] [Reprinted from 9 N. B. R. 546, by permission.]

creditors; but especially during the last six months or more prior to the time of their failure, they were generally reputed to be in a failing or insolvent condition. On the 4th of August, 1870, the judgment in favor of respondent Edward Roberts for one thousand and fourteen dollars and nineteen cents was entered; and on the 18th of the same month, judgments were also entered in favor of Edward Roberts, R. L. Johnston, Johnston & Scanlan, Shoemaker & Oatman, W. H. Sechler, John A. Blair, John Wambaugh, Snyder, Harris, Bassett & Co., Samuel A. Fry, for five thousand two hundred and twenty-eight dollars and thirty-three cents, John R. & A. Murdock, James Hill & Co., Samuel A. Fry for one thousand one hundred and seven dollars and seventy-five cents, all upon warrants of attorney, excepting the first one named in favor of Samuel A. Fry, which was entered by the prothonotary upon paper filed, signed by the defendant. The judgment in favor of James Hill & Co. was entered early in the forenoon of the 18th August, 1870, on a warrant of attorney of that date, for one thousand two hundred and ninety-four dollars, and was due the next day. It was publicly reported that an execution would be issued on this judgment as soon as due. The contesting respondents, Samuel A. Fry, Edward Roberts, Johnston & Scanlan, R. L. Johnston, John A. Blair, and John R. & A. Murdock, had actual knowledge or notice of the entry of the judgment in favor of James Hill & Co. on the morning of the 18th August, 1870, either by themselves or through their authorized attorney, as well as of the previously embarrassed condition of Fry, and Fry, Duerr & Co., and in order to obtain priority immediately commenced to enter judgments upon the warrants of attorney held by them, and to issue executions thereon. Other judgments were subsequently entered upon warrants of attorney and executions issued. These executions were levied upon the personal property of A. G. Fry, and Fry, Duerr & Co.; the store closed, mill stopped, and their business entirely suspended and broken up. On the 18th of August, 1870, A. G. Fry assigned to John N. Evans, his clerk in the store, book accounts against persons who had bought goods on credit in the store to the amount of eight hundred and sixty-seven dollars and fifteen cents, for the alleged purpose of paying the salary then due him; and four days afterwards transferred to the respondent, John A. Weiser, all the balance of the accounts in the store, by a transfer under his hand and seal endorsed upon the fly leaf of the ledger, for the purpose of securing the payment of two thousand five hundred dollars, alleged in the transfer to

be due said Weiser. John N. Evans collected the accounts assigned to him, and John N. Weiser, by his counsel, Johnston & Scanlan, a part assigned to Weiser, before the appointment of the assignee.

S. Ewart & Co., and other open account creditors filed a petition in bankruptcy against A. G. Fry on the 7th September, 1870, at 11 o'clock a. m., and George Huntley filed a petition against Fry, Duerr & Co., on the same day, at 3 o'clock p. m., on which adjudications in bankruptcy were made, and the complainant subsequently elected assignee.

The complainant filed the present bill in the district court on the 8th August, 1872, for the purpose of setting aside the transfers of the book accounts, and the judgments confessed, and executions issued thereon in the common pleas of Cambria county, in violation of the bankrupt act, to liquidate liens, and to recover the assets of the estate. After the bill was served, all the respondents named in it, compromised, on the 28th of October, 1872, by a decree entered setting aside the preferences obtained in their favor, excepting Samuel A. Fry, John A. Weiser, Edward Roberts, R. L. Johnston, Johnston & Scanlan, John A. Blair, and John R. & A. Murdock, who filed answers, and the case proceeded as to them. The subpœna was not served on Lawrence Smith and John Ludwig, who were not found within the district; and the bill was taken pro confesso against John N. Evans for want of appearance. On the 7th September, 1870, judgment was entered in favor of E. B. Camp, execution issued, and on the 19th of November, 1870, levied upon the steam saw mill in Susquehanna township, including two small pieces of land; the piece with the mill on it was on the 8th of March, 1871, sold to respondent Thomas H. Cresswell, who afterwards moved the mill away, and converted it to his own use; the other piece was sold to respondent Henry Hopple. The judgment and execution of E. B. Camp, on which these sales were made, was also set aside by the decree of the 28th October, 1872. On the 26th September, 1872, the complainant, with leave of the court, filed an amendment making respondents Thomas H. Cresswell, Susan Keith and Henry Hopple parties, alleging that the levy and sale after petitions in bankruptcy filed, were void and conferred no title upon the purchasers. Afterwards the case was compromised as to Henry Hopple, and proceeded as to Thomas H. Cresswell and Susan Keith, who claimed as terre tenant.

The case came on for hearing before the Hon. Wilson McCandless, on the 9th July, 1873, upon bill, amendment, answer, and replication to each, proofs and exhibits; but upon intimation from the respondents' counsel that the case would be taken to the circuit court in any event, his honor remarking that it had better go there at once, dismissed the bill pro forma, as to the respondents, Samuel A. Fry, John A. Weiser, Edward Roberts, R. L. Johnston, Johnston & Scanlan, John A. Blair, John R. & A. Murdock, Thomas H. Cresswell and Susan Keith; from which decree the respondent appealed.

Geo. M. Reade, for complainant.

R. L. Johnson and W. D. Moore, for respondent in the judgments and book accounts.

F. A. Shoemaker, for respondents in amended bill.

McKENNAN, Circuit Judge. Creditors' petitions were filed in the district court on the 7th September, 1870, against A. G. Fry and Fry, Duerr & Co., who were merchants and traders, and were so proceeded in that they were duly adjudicated bankrupts and the complainant was appointed their assignee. On the 18th August, 1870, judgments were entered in the court of common pleas of Cambria county, on warrant of attorney in favor of the respondents severally, except Weiser, Cresswell, and Keith, executions were issued and levied upon the stock in trade of the bankrupts and their business was stopped.

The bill seeks to avoid these judgments as fraudulent under the bankrupt act [of 1867 (14 Stat. 517)], and to obtain a transfer of the fund produced by the executions to the complainant. By the thirty-fifth section of the bankrupt act any transfer, direct or indirect, of any part of his property, by an insolvent debtor to a creditor who had reasonable cause to believe that he is insolvent, and that such transfer is made in fraud of the provisions of the act, is declared to be void, and the assignee is empowered to recover the property or the value of it, from the persons receiving it or to be benefited by its transfer. Under this section, it was held by this court, after careful consideration, in Hood v. Karper [Case No. 6,664], that the confession of a judgment, the issuing of an execution and a seizure and sale of property under it, constituted an indirect transfer of such property by the debtor. In the same case it was also held that the objectionable transfer and preference were to be considered as made and obtained when the warrant of attorney was executed by the entry of the judgment, irrespective of the date of the warrant; and that when an execution must necessarily stop the debtor's business, the creditor, in general, has reason to believe the debtor to be insolvent, and must be considered as intending what, if not prevented, would be a fraud on the provisions of the act.

The co-existence of these elements of illegality in the judgments complained of, is clearly established by the proofs in the present case. At the time of their entry the bankrupts were insolvent, within any definition of insolvency, the judgments were en-

tered upon warrants of attorney a few days before the institution of the bankruptcy proceedings, executions were cotemporaneously issued upon them, which were levied upon all the available assets of the bankrupts, and their business was at once entirely broken up. There is no room for doubt, therefore, that these judgments are impressed with all the attributes of fraudulent preferences as the bankrupt law defines them. Nor, as was urged at the argument, is this conclusion inconsistent with the decision of the supreme court in Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473]. In that case the creditor's judgment was obtained without the aid or co-operation, direct or collusive, of the bankrupt, and so was strictly adverse. The resulting preference lacked the essential element of promotion by the bankrupt to infect it with the taint of fraud. The court, therefore, held that the mere failure of the debtor to file a petition in bankruptcy to prevent the judgment and levy was not sufficient evidence of an intent to give preference, or to defeat the operation of the bankrupt law. But in this case the attitude of the debtors was not passive. The judgments against them were obtained by their own act, because what was done by another by their express authority was done by them, and the preference thereby secured by the creditors is conclusively presumed to have been the intended consequence of that act. There is, then, as broad a distinction between the cases as there is between bona fide passiveness on the part of an insolvent debtor in an adverse proceeding, which is not an element of fraud, and positive promotion of an objectionable preference, which is.

It was insisted, however, that this court cannot take cognizance of the complaint, because the fund produced by the sale of the bankrupt's property under the judgment and executions sought to be avoided is in the custody of a state officer, and is subject to distribution under the direction of the state court. The bankrupt law provides the necessary machinery for its complete administration. Ample jurisdiction in law and equity, is conferred upon the federal courts to fulfill all its exigencies. Indeed, the efficient, successful and uniform operations of the system depends upon the adequacy of the means provided for its execution and their prompt availability, as occasion may require. Certainly it was not made dependent upon the optional exercise, by independent tribunals, of the jurisdiction which it confers. While the state courts may exercise concurrent jurisdiction with the federal courts, in certain cases arising out of proceedings in bankruptcy, they are not bound to do so. The latter alone are the appointed instrumentalities for the execution of the law, and their duty to do it is imperative. A federal court was, therefore, the appropriate tribunal to resort to for the relief sought in the present case. The complainant might have re-

sorted to the state court, but he was not bound to do so. He is necessarily the actor, and until he invoked its cognizance, and thus acquired jurisdiction over the parties and the subject matter of the cause, no rule of comity even is violated by an appeal to the federal tribunal expressly constituted for the adjudication of his complaint.

In the unquestionable and necessary exercise of the power conferred by the bankrupt law, it is the practice of the federal courts to inquire into the validity of the judgments entered in the state court, to restrain their enforcement by execution, and, if adjudged to be fraudulent under the act, to set them aside and decree the transfer of the property seized in execution under them, or the proceeds of its sale to the bankruptcy assignee. Even when such proceeds have been received under the order of a state court, by a creditor obtaining a fraudulent preference, the value of the property sold or appropriated has been adjudged to the assignee. And this is not only expressly authorized by the bankrupt act, but has been decided by the supreme court in Shawhan v. Wherritt, 7 How. [48 U. S.] 627, to be a proper method, under the analogous provisions of the bankrupt act of 1841 [5 Stat. 440]. In this circuit the equitable remedies to effectuate these results have been allowed only against the beneficiaries of illegal preferences and transfers of the bankrupt's property. Possibly a too fastidious interpretation of the act of congress, forbidding injunctions against proceedings in state courts, has induced the exemption of the executive officers of these courts from these remedies; but in some other circuits, at least, this immunity is not accorded. In the second circuit similar bills to the one in this case are entertained against sheriffs, and in answer to an objection that the authority of the state courts was hereby interfered with, the able judge of that circuit, Mr. Justice Woodruff said: "On behalf of the sheriff it is insisted that he is an officer of the state court and held the property by virtue of their mandate, and that this is an interference with the authority and jurisdiction of the state courts, and therefore the sheriff ought not to be made a party. There is nothing in this. The proceeding no more interferes with him, or with the state courts, than would an action of trover or replevin, where he levies upon and retains property which he has no right to apply to pay an execution. He is made a party for his own protection, and because he holds the subject of controversy. No decree is sought and none should be made affecting him, otherwise than as the custodian of the fund, and to secure the control of the court over it. He has in no other sense any personal interest in the controversy, and ought not to be prejudiced in any manner by the decree." But if only the parties beneficially implicated in the objectionable transfers are to be affected by the decree, there even is less reason for the

suggestion that there is any encroachment upon the rightful province of the state courts. There was, however, no question of which the state court has assumed cognizance which this bill seeks to withdraw from it.

Pending the levy under the judgments complained of, proceedings in bankruptcy were commenced against the defendants in them. Upon the finding of a jury on an issue demanded by them, they were adjudged bankrupts, and the present suit was thereupon instituted. The property seized by the sheriff was sold, and the proceeds are in his custody without any movement for their distribution, having been made in the state court when this bill was filed. As a distribution of the fund by that court, without the intervention of the complainant, would not affect his right to recover it from those to whom its payment might be decreed, and as he alone could contest the validity of the judgments as fraudulent preferences, the state court had not acquired a jurisdiction of the parties, which would preclude him from resorting to another tribunal invested with full power to decree and enforce the relief to which he might be entitled. There is, therefore, no reason of comity why the complaint should not be entertained. On the contrary, obvious considerations touching the prompt and complete adjustment of the equities of the parties, and the speedy administration of the bankrupt's estate, required that it should be entertained. The transfer of the book accounts to John A. Weiser is clearly unsustainable. It was made after executions had been issued against the bankrupts to a large amount, when their business was stopped and their insolvency manifest, and avowedly to give Weiser a preferential security for his claim against them.

The supplemental bill against Thos. H. Cresswell and Susan Keith stands upon a different footing. Susan Keith is the bona fide alienee of Cresswell of a small piece of land purchased by him at sheriff's sale as the property of the bankrupts, under a judgment entered on the day of, presumable under the proofs, before the filing of the petition in bankruptcy. This judgment and the process issued upon it were not void, but only voidable in the bankruptcy court. Although Cresswell had constructive notice of the bankruptcy proceeding, yet the judgment under which he purchased was apparently a valid lien under the state law upon the property, and he had no notice of any infirmity in it. Its subsequent avoidance, as fraudulent preference, by the consent of the plaintiff in it, in a proceeding to which Cresswell was not a party at the time, can have no effect upon his title. He, therefore, occupies the position of a bona fide purchaser for value, without notice of the invalidity of the judgment, and bill against him and Susan Keith must be dismissed.

No actual fraud is imputable to any of the other respondents, and they ought not to be subjected to the harsh penalty of exclusion from participation in the assets of the bankrupts, which would result from a final decree against them. They should be allowed the choice of the only alternative of escape from it. If, therefore, within thirty days the holders of the objectionable judgments, respondents in the bill, cause the fund produced by their executions with any interest which may have accrued from its use, to be turned over to the complainant less the sheriff's commission and costs of sale; if John A. Weiser account for and pay to the complainant the amount of the book accounts collected by or for him, and transfer to complainant all the accounts remaining unpaid, deducting any sum or sums paid by him for collection: and if all these respondents deliver a writing to the complainant surrendering their alleged liens or preferences, and agreeing that the costs of this suit together with a reasonable compensation to the complainants' solicitor, to be fixed by agreement of the parties or the allowance of this court, may be deducted from their dividends of the bankrupt's assets, no final decree will be entered in this case, and they will be allowed to prove their debts before the register.